## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **VS.** | ) | **Civil Action No.  SA-06-CA-171-XR** |
| | ) | |
| **$13,275.21, MORE OR LESS, IN** | ) | |
| **UNITED STATES CURRENCY** | ) | |
| | ) | |
| **Respondent.** | ) | |

### ORDER

On this date, the Court considered Claimant's motion to amend judgment for payment of attorney's fees, costs, and interest (Docket No. 65), Claimant's fourth motion for sanctions against the United States and the Drug Enforcement Administration (Docket No. 66), Government's sealed motion for certificate of reasonable cause (Docket No. 73), and Claimant's second motion for hearing on all matters pending before the Court (Docket No. 78).

For the reasons discussed below, the motion to amend judgment is DENIED (Docket No. 65), the motion for sanctions is DENIED (Docket No. 66), and the motion for a hearing is DISMISSED AS MOOT (Docket No. 78).  The Government's motion for certificate of reasonable cause is GRANTED (Docket No. 73), and the certificate is hereby ISSUED.  This Order will not be sealed.

### I. Factual & Procedural Background

This case is an *in rem* civil forfeiture action.  On or about August 26, 2005, $13,275.21 was seized from Claimant Heriberto "Herb" Huerta's Federal Bureau of Prisons Inmate Trust Fund Account pursuant to the execution of a lawful federal seizure warrant by Special Agents of the Drug

Enforcement Administration ("DEA"). The Government claims that some or all of the money contained in Huerta's inmate trust account represents the laundered proceeds of illegal narcotics trafficking. The Government claims that Huerta is the "president for life" of the Mexican Mafia and that members of the Mexican Mafia and Huerta's family actively participate in transferring illegal drug proceeds to Huerta's inmate account. On November 28, 2005, Huerta furnished a claim to the DEA for the respondent property. On February 22, 2006, the Government filed a verified complaint of forfeiture.

On December 15, 2006, the Government filed a motion to dismiss pursuant to Rule 41(a)(2). The Government stated that "it is in the best interest of the United States to file this Motion to Dismiss the instant forfeiture action." On December 18, 2006, the Court granted the motion, ordered the United States Marshals Service to return the seized money to Claimant, and dismissed the case without prejudice. *See* FED. R. CIV. P. 41(a)(2) ("Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice"). On December 19, 2006, Claimant filed his response to the motion to dismiss, stating that he was unopposed to the motion to dismiss but would pursue a claim for attorney's fees and costs with the Court. Claimant argues that based on the Court's Rule 41(a)(2) dismissal, he has "substantially prevailed" in this action, which entitles him to attorney's fees under 28 U.S.C. § 2465(b)(1)(A) ("[I]n any civil proceeding to forfeit property under any provision of Federal law in which the claimant substantially prevails, the United States shall be liable for – reasonable attorney fees and other litigation costs reasonably incurred by the claimant").

## II. Legal Analysis

**A.    The motion to amend judgment for payment of attorney's fees and costs is DENIED (Docket No. 65). Claimant is not entitled to a mandatory award of attorney's fees and costs pursuant to 28 U.S.C. § 2465(b)(1)(A) because he did not substantially prevail in**

this case.  **The Court refuses to exercise its discretionary authority to award attorney's fees and costs pursuant to Rule 41(a)(2) as a condition of the dismissal without prejudice.**

The Court finds that Claimant is not entitled to attorney's fees and litigation costs because the dismissal pursuant to Rule 41(a)(2) was voluntary and without prejudice.  Claimant argues that he is entitled to attorney's fees and costs in the amount of $73,302.90 because he "substantially prevailed" in this case.  The Court disagrees.

Claimant cites to 28 U.S.C. § 2465(b)(1)(A) and Fed. R. Civ. P. 54(d)(1) for the proposition that he is entitled to both attorney's fees and costs.  However, Rule 54(d)(1) does not govern the award of costs in this case because 28 U.S.C. § 2465(b)(1)(A) expressly provides the legal standard for the award of both attorney's fees and litigation costs in civil forfeiture actions.  *See* FED. R. CIV. P. 54(d)(1) ("*Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs*") (emphasis added); *see* 28 U.S.C. § 2465(b)(1)(A) ("[I]n any civil proceeding to forfeit property under any provision of Federal law in which the claimant substantially prevails, the United States shall be liable for – reasonable attorney fees and other litigation costs reasonably incurred by the claimant").  Therefore, the Court will evaluate claimant's motion for attorney's fees and costs based solely on the "substantially prevails" standard of section 2465(b)(1)(A).[1]

---

[1]Even if the Court relied on the "prevailing party" standard of Rule 54(d)(1) in determining whether to award costs in this case, the Court could not award costs to Claimant because the December 18, 2006 dismissal was without prejudice.  *See Pacheco v. Mineta*, 448 F.3d 783, 795 n.19 (5th Cir. 2006) ("A dismissal with prejudice is tantamount to a judgment on the merits and thus the prevailing party is entitled to costs") (citing *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985)).  Unlike a dismissal without prejudice, a dismissal with prejudice has the effect of a final adjudication on the merits and bars further adjudication of the claim.  *See Schwarz*, 767 F.2d at 131.  This Court

In his reply to the Government's response to the motion to amend judgment, Claimant argues that he has substantially prevailed because (1) the Court ordered the Government to return the money to Claimant in the Order of dismissal and (2) the Court is obligated to apply the "plain meaning of the statute."

The Court finds that the Supreme Court decision of *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't Of Health & Human Res.* provides the correct legal standard for the award of attorney's fees and costs in this civil forfeiture case. 532 U.S. 598 (2001). In *Buckhannon*, the Supreme Court examined the meaning of the term "prevailing party" as it applies to an award of attorney's fees under the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 (FHAA). *Buckhannon* held "enforceable judgments on the merits and court-ordered consent decrees" entitle the plaintiff to "prevailing party" status. *Id.* at 604. The Supreme Court reasoned that enforceable judgments on the merits and court-ordered consent decrees create the "material alteration of the legal relationship of the parties" necessary to permit an award of attorney's fees. *Id.* at 604. Private settlements do not entail the judicial approval and oversight involved in consent decrees. *Id.* at 604 n.7. The Supreme Court rejected the "catalyst theory," stating that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change. Our precedents thus counsel against holding that the term 'prevailing party' authorizes an award of attorney's fees without a corresponding alteration in the legal relationship of the parties." *Id.* at 605.

The Fifth Circuit has applied the *Buckhannon* standard to requests for attorney's fees under

---

could not locate one Fifth Circuit case holding that dismissal without prejudice pursuant to Rule 41(a)(2) entitles a party to costs under the "prevailing party" standard of Rule 54(d)(1).

42 U.S.C. § 1988.  *See Walker v. City of Mequite, Tex.*, 313 F.3d 246, 249 (5th Cir. 2002). *Walker*

held that to qualify as a prevailing party, the plaintiff must (1) obtain actual relief, such as an

enforceable judgment or a consent decree; (2) that materially alters the legal relationship between

the parties; and (3) modifies the defendant's behavior in a way that directly benefits the plaintiff at

the time of the judgment or settlement. *Id.* at 249 (citing *Farrar v. Hobby*, 506 U.S. 103,111-12

(1992)).  Relying on *Buckhannon*, the Fifth Circuit has also stated that the "prevailing party does not

encompass a plaintiff who achieves his desired result because he files a lawsuit which brings about

a voluntary change in the defendant's conduct." *Hayes v. Petroleum Helicopters, Inc.*, 48 Fed. Appx.

481, 481 (5th Cir. 2002).  "To qualify as a 'prevailing party,' the plaintiff must secure either a

judgment on the merits or a court-ordered consent decree." *Id.*

      The Court concludes that *Buckhannon* is applicable to claims for attorney's fees and costs

in civil forfeiture actions.  The D.C. Circuit has held that *Buckhannon* applies to claims for attorney's

fees under the Freedom of Information Act ("FOIA").  *Oil, Chemical & Atomic Workers Int'l Union,*

*AFL-CIO v. Dep't of Energy*, 288 F.3d 452, 455 (D.C. Cir. 2002).  In a FOIA case, the court "may

assess against the United States reasonable attorney fees and other litigation costs reasonably

incurred in any case under this section in which the complainant has substantially prevailed." 5

U.S.C. § 552(a)(4)(E).  The D.C. Circuit noted that civil forfeiture actions utilize the "substantially

prevails" standard for awarding attorney's fees and costs. *Id.* at 454. The D.C. Circuit equated

FOIA's "substantially prevailed" standard with *Buckhannon*'s "prevailing party" standard:

> We therefore adhere to the proposition, well-established in this court and in the
> Supreme Court, that eligibility for an award of attorney's fees in a FOIA case should
> be treated the same as eligibility determinations made under other fee-shifting
> statutes unless there is some good reason for doing otherwise. One such reason, the
> union argues, is the contrast between the language of the statutes in *Buckhannon*,

which authorized fees for the "prevailing party," see 42 U.S.C. §§ 3613(c)(2) & 12205, and FOIA, which allows fees if "the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). It is true, as the union points out, that *Buckhannon* treated "prevailing party" as a "legal term of art." 532 U.S. at 603, 121 S.Ct. at 1839. Yet all must agree that a "prevailing party" and a "party who prevails" are synonymous. FOIA's addition of the modifier "substantially" might possibly be taken as limiting the category of "prevailing parties," but it cannot be taken as expanding the universe of parties eligible for a fee award . . . . Consistent with our practice (and the Supreme Court's) of viewing the various fee-shifting statutes as interchangeable, we have in the past treated the "substantially prevail" language in FOIA as the functional equivalent of the "prevailing party" language found in other statutes. *See Foster v. Boorstin*, 561 F.2d 340, 342 (D.C. Cir. 1977).

*Id.* 455-56. Relying on *Oil, Chemical & Atomic Workers Int'l Union*, a district court in the Fifth Circuit has held that *Buckhannon* applies to awards of attorney's fees under FOIA. *W& T Offshore, Inc., v. United States Dep't of Commerce*, No. 03-2285, 2004 WL 2984343, *3 (E.D. La. Dec. 23, 2004). Based on this authority, the Court concludes that *Buckhannon* is applicable to claims for attorney's fees and costs in civil forfeiture actions.

The Court's Rule 41(a)(2) dismissal Order was not a judgment on the merits or a settlement agreement enforced through a consent decree that created a material alteration of the legal relationship of the parties. Claimant argues that the Court's December 18, 2006 Order represented a judgment for claimant; however, the Court's dismissal without prejudice is not an enforceable judgment *on the merits*. The Court's Order required the Government to return the seized money as a condition of dismissal pursuant to Rule 41(a)(2); however, this condition simply returned the parties to the *status quo ante* and did not materially alter their legal relationship. In the future, the Government may refile this forfeiture action because the dismissal was without prejudice. A dismissal without prejudice, by its very nature, does not materially alter the legal relationship between the parties. *See Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314, 319 n.5 (5th Cir. 2002) (a

voluntary dismissal without prejudice "leaves the situation the same as if the suit had never been brought in the first place") (quoting *Humphreys v. United States*, 272 F.2d 411, 412 (9th Cir.1959)). The Fifth Circuit has never held that a defendant is entitled to costs under Rule 54(d)(1) simply because the Court granted a plaintiff's motion for voluntary dismissal without prejudice. *See* fn.1. The Court believes that Claimant is relying on the "catalyst theory" for recovery of attorney's fees and costs that was rejected by the Supreme Court in *Buckhannon*.

The Court acknowledges that the Supreme Court's "prevailing party" jurisprudence primarily focuses on a prevailing plaintiff who sought damages or injunctive relief against a defendant. A claimant in civil forfeiture actions more closely resembles a defendant who is trying to defeat a claim of the United States against his property. In this case, Claimant is attempting to prevent the United States from permanently depriving him of the seized money. Therefore, Claimant cannot prevail by obtaining money damages or an injunction against the United States; he would prevail if he prevented the United States from permanently depriving him of his property. For purposes of a civil forfeiture action, the Court concludes that a claimant in a civil forfeiture action "substantially prevails" when he obtains a dismissal with prejudice, summary judgment, or a judgment on the merits after trial. All of these successful outcomes for a claimant would have *res judicata* effect. The Fifth Circuit has held that a dismissal with prejudice is tantamount to a judgment on the merits because of its *res judicata* effect, which bars the Government from further adjudication of the claim. *See Schwarz*, 767 F.2d at 131. A Rule 41(a)(2) dismissal without prejudice simply does not fall within this category. The Court refuses to amend the December 18, 2006 Order so that the dismissal is with prejudice, which would entitle Claimant to attorney's fees and costs pursuant to section 2465(b)(1)(A). Consequently, the motion to amend judgment pursuant to section 2465(b)(1)(A) is

DENIED.

Claimant argues that it is unjust to allow the Government to voluntarily dismiss this civil forfeiture action without prejudice pursuant to Rule 41(a)(2) because the Government has saddled Claimant with significant expenses.  The Government has no liability for attorney's fees and costs under section 2465(b)(1)(A) and is not barred by *res judicata* from bringing a subsequent, identical forfeiture action.  Although this argument initially appears persuasive, it ignores the Court's discretionary authority pursuant to Rule 41(a)(2) to order reimbursement of attorney's fees and costs as a condition of the dismissal without prejudice.  It also ignores the Court's discretionary authority pursuant to Rule 41(a)(2) to dismiss with prejudice or to refuse to dismiss entirely.  Simply put, Claimant cannot obtain a mandatory award of attorney's fees and costs pursuant to section 2465(b)(1)(A) because he did not substantially prevail; however, he might be able to obtain a discretionary award of attorney's fees and costs pursuant to Rule 41(a)(2), which gives the Court the authority to condition a plaintiff's voluntary dismissal "upon such terms and conditions as the court deems proper."

In granting the Government's motion to dismiss, this Court relied on Rule 41(a)(2), which states that "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper."  Rule 41(a)(2) is designed to protect non-movants from prejudice occasioned by unconditional dismissals.  *Elbaor*, 279 F.3d at 316 n.1. As a general rule, motions for voluntary dismissal should be freely granted unless the non-moving party will suffer some plain legal prejudice other than the mere prospect of a second lawsuit. *See Manshack v. Southwestern Elec. Power Co.*, 915 F.2d 172, 174 (5th Cir.1990). The primary purpose of Rule 41(a)(2) is to "prevent voluntary dismissals which unfairly affect the other side, and to

permit the imposition of curative conditions." *Id.*  However, the fact that additional expense will be incurred in relitigating issues in another forum will not generally support a finding of "plain legal prejudice" and denial of a Rule 41(a)(2) motion to dismiss. *Elbaor*, 279 F.3d at 318 n.3.

Rule 41(a)(2) gives the district court "discretion to create and attach conditions to the grant of a plaintiff's motion to dismiss without prejudice." *Conley v. Aetna Life Ins. Co.*, No. 99-10149, 2000 WL 554056, *3 (5th Cir. April 11, 2000).  This Court possesses the discretionary authority to award attorney's fees and costs to Claimant based on significant expenses incurred by Claimant prior to the Government's filing of its Rule 41(a)(2) motion for voluntary dismissal.  *Elbaor*, 279 F.3d 314, 318 n.3; *Conley,* 2000 WL 554056 at *3; *Yoffe v. Keller Indus., Inc.*, 580 F.2d 1266, 129 (5th Cir. 1978); *American Cyanamid Co. v. McGhee*, 317 F.2d 295, 298 (5th Cir. 1963); *see also Hartford Acc. & Indem. Co. v. Costa Lines Cargo Services, Inc.*, 903 F.2d 352, 360 (5th Cir.1990) ("Where the plaintiff does not seek dismissal until a late stage and the defendants have exerted significant time and effort, the district court may, in its discretion, refuse to grant a voluntary dismissal").  The issue in this case is whether the Court will exercise that discretionary authority by awarding attorney's fees and costs to Claimant.

The Court does not believe that a discretionary award of attorney's fees and costs is warranted in this case.  The Court dismissed this case without prejudice upon such terms and conditions that the Court deemed proper—the return of the $13,275.21 to Claimant.  On December 18, 2006, the Court decided not to dismiss this case with prejudice, which would have entitled Claimant to attorney's fees and costs pursuant to section 2465(b)(1)(A).  As discussed below, the Court finds that the Government had probable cause to seize the funds contained in Huerta's inmate account.  The Court simply does not accept Claimant's argument that he is the unfortunate victim

of government overreaching.  At least three separate confidential informants who were former or current members of the Texas Mexican Mafia told law enforcement agents that Huerta's family funneled laundered drug proceeds to Huerta's inmate account.  The Court finds that the Government did not unnecessarily delay the dismissal or engage in unfair litigation tactics.  The case was not frivolous or brought in bad faith for purposes of harassment.  The Court finds that the equities do not weigh in favor of a discretionary award of attorney's fees and costs to Claimant as a condition of the Rule 41(a)(2) dismissal without prejudice.

**B.      The motion for certificate of reasonable cause is GRANTED (Docket No. 73), and the certificate is hereby ISSUED.**

The issuance of a certificate of reasonable cause rests upon 28 U.S.C. § 2465(a)(2), which provides:

> Upon the entry of a judgment for the claimant in any proceeding to condemn or forfeit property seized or arrested under any provision of Federal law—if it appears that there was reasonable cause for the seizure or arrest, the court shall cause a proper certificate thereof to be entered and, in such case, neither the person who made the seizure or arrest nor the prosecutor shall be liable to suit or judgment on account of such suit or prosecution, nor shall the claimant be entitled to costs, except as provided in subsection (b).

A certificate of reasonable cause is designed to "protect the person at whose instance the seizure was made, should an action of trespass be brought against him by the claimant for the wrongful seizure of the latter's property." *United States v. Abatoir Place*, 106 U.S. (16 Otto) 160, 162 (1882).  Courts have elaborated upon this idea of the certificate as a way to "protect" officials who are responsible for seizing potentially forfeitable property. *United States v. 83 Sacks of Wool & 5,974 Sheepskins*, 147 F. 747, 749 (D. Me. 1906) (court held that certificate should be issued on a finding of reasonable cause, "for, unless government officers shall feel assured that they will receive the protection of the

courts in cases where they acted faithfully, carefully, and reasonably, they may become too timid for the performance of their grave and important duties"). The United States Supreme Court held that with regard to the certificate of reasonable cause, "reasonable cause" is synonymous with "probable cause." *Stacey v. Emery*, 97 U.S. (7 Otto) 642, 646 (1878).

Because courts have held that 28 U.S.C. § 2465 was enacted to protect the officials responsible for the seizure of potentially forfeitable property, courts generally look to the moment of seizure in considering whether or not to grant the certificate. *U.S. v. Parcels of Real Property*, 795 F. Supp. 1225, 1230 (D. Mass. 1992). Thus, "rather than considering later developments which either support or counsel against the issuance of the certificate, courts limit their review to the evidence as it existed at the time of seizure for purposes of assessing whether 'reasonable cause for the seizure' existed within the meaning of the statute." *Id.*

Based on the content of Sealed Appendix A, the Court concludes that the Government had probable cause to seize the $13,275.21. Sealed Appendix A is the affidavit of a DEA agent. The DEA agent obtained the information contained in the affidavit by relying on a variety of investigative methods, including Title III electronic surveillance, physical surveillance, and the use of confidential sources of information. Sealed Appendix A stated that Huerta is recognized by the membership of the Texas Mexican Mafia as its "president for life." The Mexican Mafia controls narcotics distribution of non-members by requiring non-members to pay a tax, known as "the dime" or "the ten percent," for the privilege of selling narcotics. The Mexican Mafia imposes and collects this ten percent tax on the proceeds of all illegal drug sales by non-members. Failure to pay the tax will result in serious bodily injury, robbery, or death. In exchange for paying the ten percent tax, the Mexican Mafia provides the taxpayer protection from robbery, assistance in collecting drug debts, and some

degree of protection from competing drug dealers.

Investigative agents with the DEA interviewed a reliable cooperating source ("CS1") who stated that the proceeds of the ten percent extortion tax was and is currently used to support Huerta in prison.  CS1 stated that he participated on multiple occasions in sending these illegal funds of at least $10,000 every month to Huerta's inmate account.  CS1 also stated that family members of Huerta are actively involved in forwarding laundered proceeds from the Mexican Mafia to Huerta's prison account.

A second reliable cooperating source ("CS2") stated that family members of Huerta actively participate in transferring illegal Mexican Mafia proceeds to the prison account of Huerta.  A third reliable cooperating source ("CS3") stated that during a Mexican Mafia meeting, a Mexican Mafia General instructed the members to increase the illegal tax collections from drug dealers because more money was needed to be sent to Huerta.  Specifically, the Mexican Mafia General stated that Huerta was expecting $10,000.  CS3 also confirmed that family members of Huerta actively participate in transferring illegal Mexican Mafia drug proceeds from the membership to Huerta's inmate account.  During the deposition of one of the confidential informants in this case, the deponent corroborated that family members of Huerta actively participate in transferring illegal Mexican Mafia proceeds to Huerta's inmate account.

Investigative agents also interviewed a high ranking Mexican Mafia member arrested in San Antonio on narcotics and weapons violations.  The arrested person stated that the Mexican Mafia had released a large sum of money to a Mexican Mafia General, and a significant portion of that money was earmarked for Huerta.  This large sum of money represented the proceeds of the ten percent extortion tax.

-12-

Based on this information, the Court finds that probable cause supported the seizure of the proceeds in Huerta's inmate account.  There is probable cause to believe that some or all of the money seized by the Government from Huerta's inmate account represented the proceeds of illegal narcotics trafficking.  The Government's motion for certificate of reasonable cause is GRANTED (Docket No. 73), and the certificate is hereby ISSUED.  Therefore, pursuant to 28 U.S.C. § 2465(a)(2), it is ORDERED that neither the person who made the seizure or arrest nor the prosecutor shall be liable to suit or judgment on account of such suit or prosecution, nor shall the Claimant be entitled to costs, except as provided in 28 U.S.C. § 2465(b).

**C.      The motion for sanctions is DENIED (Docket No. 66).**

Claimant filed a fourth motion for sanctions, arguing that the United States purposefully included false information in Sealed Appendix A of the verified complaint of forfeiture.  The motion for sanctions is DENIED because the Court concludes that the information contained in Sealed Appendix A was not false.  On November 1, 2006, Claimant deposed one of the Confidential Informants mentioned in Sealed Appendix A. The Court believes that the information elicited from the confidential informant during that deposition can be harmonized with the information contained in Sealed Appendix A.  During the deposition, Claimant demonstrated that the deponent had not spoken to a particular agent ("Agent X") about Huerta's inmate account prior to 30 days before the deposition.  However, Sealed Appendix A states that all three confidential informants spoke with "investigative agents" about Huerta, without identifying the names of those agents. In its response to Claimant's motion for sanctions, the Government advised the Court that a number of law enforcement officers, *not including Agent X*, interviewed the deponent about Huerta and the laundered drug money.  The Court concludes that the information contained in Sealed Appendix A

-13-

was not false and that sanctions against the Government are not warranted.

**D.      The motion for hearing on all pending matters is DISMISSED AS MOOT (Docket No. 78).**

Rule 78 of the Federal Rules of Civil Procedure states that "the court may make provision by rule or order for the submission and determination of motions without oral hearing."  Local Rule CV-7(g) of the Western District of Texas states that "a movant or respondent may specifically request an oral hearing, but the allowance of an oral hearing shall be within the sole discretion of the judge to whom the motion is assigned."  The motion for hearing is DISMISSED AS MOOT.  *See Hill v. Porter Mem. Hosp.*, 90 F.3d 220, 224 (7th Cir. 1996) (Rule 78 "expressly provides that a court may determine motions without an oral hearing. [Local rules grant] to the district court complete discretion whether an oral argument should take place on a motion").

### III. Conclusion

For the reasons discussed below, the motion to amend judgment is DENIED (Docket No. 65), the motion for sanctions is DENIED (Docket No. 66), and the motion for a hearing is DISMISSED AS MOOT (Docket No. 78).  The Government's motion for certificate of reasonable cause is GRANTED (Docket No. 73), and the certificate is hereby ISSUED.  This Order will not be sealed.

It is so ORDERED.

SIGNED this 31st day of January, 2007.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

-14-